IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC R. PARKER                      :
                                    :
                                    :
     v.                             :   Civil Action No. DKC 11-1206
                                    :
UNITED PARCEL SERVICE                :
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion to dismiss or, in the alternative, for summary judgment filed by Defendant United Parcel Service ("UPS"). (ECF No. 6). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion, construed as a motion for summary judgment, will be granted.

I.  **Background**

  A.  **Factual Background**

Plaintiff Eric Parker's claims revolve around the actions of two UPS managers, Matt Sanders and John Horne.[1] According to Parker's complaint, in June 2006, Sanders "admitted to

---

[1] The complaint does not state Parker's relationship to UPS. According to UPS's motion, prior to his discharge from the company, Parker was employed by UPS as a package car driver in Maryland. (ECF No. 6-1, at 1).

discriminating against [Parker]." (ECF No. 1, at 2).[2] Parker sought help from managers higher up the chain of command, but those managers "did nothing to stop what continued to be harassment" from Sanders. (*Id.*). Parker also sought help by calling the UPS corporate helpline, but that, too, "did nothing to stop the harassment." (*Id.*). He was told that "it would be handled at a local level hearing." (*Id.*). According to Parker, "[m]ore harassment continued in forms of unjust terminations and unjust suspensions." (*Id.*). Due to Parker's complaints, however, Sanders was eventually moved to another building.

Horne then took over as manager. Parker alleges that "[s]everal months went by and with that more harassment came." (*Id.*). At some point, Parker took off three days from work to "try to save [his] house." (*Id.*). He blames "all of the unjust suspensions" as causing him to lose his house. (*Id.*). Parker was initially only permitted to take one day off from work. He had called in to work on the other two days — presumably to request more time off — but no one answered the phone at the

---

[2] The complaint does not specify how Sanders allegedly discriminated against Parker. Instead, attached to the complaint is an unverified written statement of Jamal Horton, which explains that Parker was "given extra work purposely so that he could not get [his] route finished and later be disciplined unjustly for not completing the dispatched work." (ECF No. 1-1, at 1). Moreover, Sanders apparently told another employee at UPS that Parker "needs to be in those safety meetings." (*Id.*). No further context is provided for these occurrences.

office. Sanders apparently "lied in an [a]rbitration meeting about [Parker] not calling in and got caught in his lie." (*Id.*). Parker states that he never received back pay for those days off.

Parker returned to work and "worked for the next [five] months or so."[3] During this period, Horne "harassed [Parker] as much as [Sanders]" did. (*Id.*). At some point around this time, Parker complained to Kevin Bankett[4] about Horne "telling one of [Parker's] fellow drivers to 'Suck his . . .'." (*Id.*) (omission in original). After that, "they said they were going to get [Parker]." (*Id.*).

According to UPS, on October 26, 2007, Horne decided to terminate Parker's employment due to attendance issues. (ECF No. 6-3, Horne Decl., ¶ 4). UPS contends that at Horne's direction, Ursula Blunt, a supervisor, met with Parker on October 29, 2007, to inform him of his discharge. (*Id.* ¶¶ 4-5). Parker denies that this meeting ever took place. (ECF No. 1). In any event, Bankett sent a letter dated October 31, 2007 ("the Bankett letter"), to Parker describing the alleged October 29th meeting. (ECF No. 6-5, at 2; ECF No. 12-9, at 1).

---

[3] The complaint notes the date of Parker's return to work as "Friday 26th, 2007." (*Id.*). Based on other allegations in the complaint, it appears that this date occurred in October.

[4] Bankett was a Division Manager for UPS. (ECF No. 6-5, Bankett Decl., ¶ 2).

3

The Bankett letter also reads: "This notice is to inform you of your discharge from UPS, pending completion of the grievance procedure, as outlined in Article 7 of the current labor agreement for your overall unacceptable attendance record." (ECF No. 6-5, at 2; ECF No. 12-9, at 1). According to UPS, the terms and conditions of Parker's employment were governed by a collective bargaining agreement between UPS and the Teamsters Union. (ECF No. 6-3 ¶ 3). Pursuant to Article 7 of that agreement, termination of employment was effected via a "working discharge," which allowed an employee "to remain on the job, without loss of pay, pending the outcome of any grievance he might file." (*Id.* ¶ 6). UPS explains that because of an oversight, it "did not realize until in or about March 2008 that Mr. Parker had not filed a grievance regarding his discharge." (*Id.* ¶ 7). According to UPS, once it realized this oversight, it informed Parker that he was no longer allowed to remain on the job. Parker was finally discharged in March 2008.

B.  **Procedural Background**

On or about November 13, 2008, Parker filed a Charge of Discrimination with the EEOC. (ECF No. 6-8).[5] The Charge claimed discrimination based on race and sex as well as retaliation for complaining about the discriminatory treatment,

---

[5] Parker signed the charge on November 6, 2008.

all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* It specifically referred to Parker's discharge as occurring on March 12, 2008. According to the EEOC's Dismissal and Notice of Rights form that was mailed to Parker on March 15, 2011, the EEOC ultimately closed his case because his charge was not timely filed with the EEOC. (ECF No. 1-2).

Parker, proceeding *pro se*, filed a complaint in this court on May 6, 2011. (ECF No. 1). In the complaint, Parker generally alleges "wrongful termination, retaliation [and] discrimination" on the part of UPS in violation of Title VII (*Id.* at 1). On August 22, 2011, UPS filed the pending motion. (ECF No. 6). In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court mailed a letter to Parker on August 23, 2011, notifying him that UPS filed a dispositive motion and that his case could be dismissed or summary judgment could be entered against him. (ECF No. 8). Parker filed an opposition to UPS's motion on September 8, 2011. (ECF No. 12). On September 20, 2011, UPS replied. (ECF No. 13).

**II. Standard of Review**

Because both parties rely on matters outside the pleadings, the court will treat the motion as a motion for summary judgment. *See Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008). A

5

court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**III. Untimeliness of Administrative Charge**

As an initial matter, UPS moves to dismiss Parker's complaint, in part, for lack of subject-matter jurisdiction under Rule 12(b)(1), arguing that Parker's administrative complaint was not filed in a timely manner. Because "a failure to exhaust administrative remedies based on untimely filings is not an issue of subject matter jurisdiction," dismissal under Rule 12(b)(1) would be improper. *Brown v. McKesson Bioservices Corp.*, No. DKC 05-0730, 2006 WL 616021, at *3 (D.Md. Mar. 10, 2006); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that the requirement that a plaintiff timely exhaust administrative remedies is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Nevertheless, summary judgment may still be warranted. *See, e.g.*, *Akinjide v. Univ. of Md. E. Shore*, No. DKC 09-2595, 2011 WL 4899999, at *5 (D.Md. Oct. 13, 2011) (granting defendant's motion for summary judgment in part based on untimeliness of plaintiff's EEOC charge). Here, the untimeliness defense will be considered under Rule 56(a).

"Timeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F.Supp.2d 587, 597 (D.Md. 2000) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). In the usual case, Title VII claimants must file a charge of

7

discrimination with the EEOC within 180 days of the alleged discriminatory practice. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). This period is extended to 300 days in a deferral state, i.e., one in which "state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)). Maryland is a deferral state and its deferral agency, the Maryland Commission on Human Relations, has a work-sharing agreement with the EEOC whereby a claim filed with one agency is deemed as filed with both. *See Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F.Supp.2d 658, 662 n.4 (D.Md. 2007). Thus, in Maryland, the time for filing a charge of discrimination under Title VII is 300 days.

In this case, Parker filed his charge of discrimination with the EEOC sometime between November 6, 2008, and November 13, 2008.[6] The date 300 days prior to November 6, 2008, was January 11, 2008. The complaint alleges only one incident that occurred after this date — the March 2008 discharge of Parker. Allegations related to incidents occurring prior to that date

---

[6] This seven-day difference ultimately does not impact the incidents to be considered in evaluating Parker's claims. For present purposes, therefore, November 6, 2008, is assumed to be the filing date.

8

are time-barred, and only this single incident may be considered in evaluating Parker's claims.

UPS points out that the March 2008 discharge of Parker was merely the practical effect of his official termination in October 2007. As UPS correctly argues, this fact is significant because the filing period for an EEOC charge begins to run when an employee is notified of a discriminatory employment act, regardless of when the practical effects of that act are felt. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("The emphasis is not upon the effects of earlier employment decisions; rather, it is [upon] whether any present *violation* exists." (alterations in original) (internal quotations omitted)); *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) ("[T]he filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition."); *accord English v. Whitfield*, 858 F.2d 957, 961 (4th Cir. 1988); *Rawlings v. City of Baltimore*, No. L-10-2077, 2011 WL 1375603, at *2 (D.Md. Apr. 12, 2011).

Here, it is undisputed that Parker was notified of his discharge at least as of October 31, 2007, via the Bankett letter. Although Parker disputes that a meeting with Blunt regarding his discharge ever took place, he does not dispute that he received the Bankett letter, which clearly states that

Parker was discharged from service.  Indeed, Parker attached a copy of the Bankett letter to his opposition.  (ECF No. 12-9). In general, regardless of whether it was the Bankett letter that first notified Parker of his termination, Parker does not contest that he was terminated at this time.[7]  Thus, the filing period for Parker's EEOC charge began to run on October 31, 2007, at the latest — not March 12, 2008.

In order for the 300-day limitations period to have commenced with the March 2008 date of discharge, Parker "would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which [UPS] terminated other [similar employees]." *See Del. State Coll.*, 449 U.S. at 258.  In other words, the March 2008 discharge must have in and of itself constituted an independent incident of discrimination.  Parker never proposes that this was the case.  Moreover, UPS has proffered evidence that the "working discharge" applied to Parker's situation was standard procedure.  (ECF No. 6-7).  Although there is a small suggestion of an anomalous oversight on UPS's part that delayed

---

[7] Nowhere in the record, official or unofficial, does Parker suggest otherwise.  For example, Parker attaches to his opposition another unverified statement of facts, which, if credited, admits that he was terminated following his three-day absence from work in October 2007.  (ECF No. 12-2, at 3).

10

the actual date of discharge,[8] Parker does not respond to UPS's evidence with any of his own that remotely suggests that the *procedure* with which he was discharged was discriminatory.

Nor does Parker offer any argument or evidence for tolling the 300-day statute of limitations.  *See Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992) ("[W]here an employee fails to make timely contact with the EEO office, courts will equitably toll the statute of limitations only when the government should be estopped from asserting the time bar or if plaintiff did not know about the time requirement.").  The mere fact that Parker is proceeding *pro se* in this action is not sufficient to bend the filing rules in his favor.  *See Baldwin Cnty. Welcome Ctr.*, 466 U.S. at 152.

Accordingly, all of the discriminatory acts alleged by Parker are time-barred.  UPS's remaining arguments therefore need not be addressed, and judgment must be entered in favor of UPS on all of Parker's claims.

---

[8] If anything, this delay benefited Parker because the "working discharge" procedure provided for continued pay during the process.

11

**IV.  Conclusion**

For the foregoing reasons, the motion to dismiss or, in the alternative, for summary judgment filed by Defendant United Parcel Service will be granted.  A separate order will follow.

                                           /s/
                         DEBORAH K. CHASANOW
                        United States District Judge